IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DYLAN HANCOCK,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**THE CREDIT PROS INTERNATIONAL CORPORATION,** a New Jersey corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Dylan Hancock ("Hancock" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant The Credit Pros International Corporation. ("Credit Pros" or "Defendant") to stop Defendant from violating the Telephone Consumer Protection Act by making unsolicited, pre-recorded calls and sending unsolicited, autodialed text messages to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by Credit Pros' conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Hancock is a Stroudsburg, Pennsylvania resident.

2. Defendant Credit Pros is a New Jersey corporation headquartered in Newark, New Jersey. Credit Pros conducts business throughout this District and the United States.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is based in this District and because the wrongful conduct giving rise to this case was directed to Plaintiff from this District.

**INTRODUCTION**

5. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

6. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

7. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

8. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id*.

9. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

**CREDIT PROS**

10. Credit Pros offers credit repair solutions to consumers that include credit monitoring and credit improvement.[1]

11. Credit Pros engages in telemarketing in order to advertise its credit repair solutions to consumers.

12. Credit Pros places pre-recorded calls in which it identifies itself as being Credit Pros.

13. Credit Pros' pre-recorded calls are for the purpose of advertising Credit Pros' credit repair services.

14. Credit Pros sends autodialed text messages to consumers in which it identifies itself as Credit Pros.

15. Credit Pros autodialed text messages are also sent out for the purpose of marketing Credit Pros' credit repair services.

16. Credit Pros places these pre-recorded sales calls and sends autodialed text messages to consumers' phone numbers without obtaining their prior express written consent.

17. Credit Pros placed numerous unsolicited pre-recorded calls and sent numerous unsolicited autodialed text messages to Plaintiff's cell phone number.

18. In response to these calls and text messages, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to stop making pre-recorded voice sales calls to consumers without their consent, and to stop sending autodialed text messages to consumers without their consent, as well as an award of statutory damages to the members of the Class and costs.

---

[1] https://thecreditpros.com/

3

## COMMON ALLEGATIONS

**Credit Pros Markets its Services by Placing Pre-recorded Calls and by Sending Autodialed Text Messages to Consumers Without Their Consent**

19.  As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all … pre-recorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

20.  In sending the unsolicited text messages at issue, Defendant used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, and/or to call numbers from pre-loaded lists. This is evident from the circumstances surrounding the text messages, including the text messages' commercial and generic content, that they were sent without consent, that 3 text messages were sent within a span of 3 seconds, which is consistent with the use of an automatic telephone dialing system to send text messages.

21.  Credit Pros makes reference to its dialer system in job postings.

22.  For example, in its application for a Customer Service Representative, Credit Pros specifically states that it uses the Five9 dialer in its day to day operations:

> \* Complete a Five9 assessment to verify your audio quality. **Five9 is a phone dialer that we use in our day to day operations.** Please go to this link https://ln2.sync.com/dl/24451ffa0/7affkt8v-fua47mar-7ephxhpc-n7faqtpq and follow the instructions in the PDF file. The test runs for 30 mins or more. You must be present during the test as there is no indicator the test is finished unless the blue box disappears and once it does, take note of the timestamp. Once you have completed the assessment, post the needed information found at the end of the pdf file as an answer to this line. \*\*\*Please note, to properly take the assessment, you will need to:\*\*\* 1. Have your computer connected via Ethernet cable to your Modem/Router. Do not take assessment via wireless internet connection. 2. Close running applications on device.[2]

23. Five9 provides its users with a predictive autodialer that features automated dialing services and a predictive mathematical algorithm to increase agent efficiency:

## Outbound Calling with a Predictive Dialer

Five9 outbound allows organizations to make outbound calls to identified lists of contacts in a predictable and efficient manner. The Five9 Predictive Dialer dramatically increases the number of live connections for your agents. With a predictive mathematical algorithm, Five9 does the hard work of getting a live person on the phone. This saves time for agents from listening to unanswered calls or busy signals. Instead agents can focus on talking to people who are ready to talk.

The Five9 Predictive Dialer learns to anticipate when agents will become available and speeds up or slows down the dialing rate accordingly. We also synchronize with dialing lists including salesforce contact lists, identifying unsuccessful calls to determine if the number needs to be called back later or eliminated from the dialing list.[3]

### Predictive Auto Phone Dialer and Outbound Features

- Automated Dialer Technologies: Predictive Dialer, Power Dialer, Progressive Dialer, Preview Dialer
- Campaign & List Management
- CTI Screen Pop
- CRM Integrations: Salesforce, ServiceNow, Microsoft, Oracle, NetSuite, Zendesk
- Web Callback
- Agent Scripting
- Real-Time DNC List Management
- FTP Data Import
- Outbound Call Priority
- Disposition Timers & Redials
- Answering Machine Detection
- Automatic Voicemail Laydown
- Timezone Rules Dialing
- Vertical Dialing Mode
- List Penetration Dialing Mode
- Local Caller ID
- Quality Monitoring
- Voice Recording
- Standard & Custom Reports
- Remote Agents

[4]

---

[2] https://apply.workable.com/the-credit-pros/j/989AF10E7B/apply/
[3] https://www.five9.com/products/virtual-contact-center/predictive-dialer
[4] *Id.*

5

24. Credit Pros does not have consumers' prior express written consent to make pre-recorded solicitation calls or to send autodialed solicitation text messages, and therefore, Credit Pros' pre-recorded voice calls and autodialed text messages violate the TCPA.

25. There are many consumer complaints online regarding Defendant's unwanted pre-recorded calls and autodialed text messages.

26. A consumer posted the pre-recorded message received from Defendant Credit Pros on Youmail.com. This recording is similar to the pre-recorded call that the Plaintiff received.



27. Additional online complaints include the following:



- "Someone from ************ keeps texting me... Says they are from The CreditPros. They have sent 5 texts just today! I have never contacted them. If this is not their business, then they need to contact the number above and let them know to stop texting people saying that they are The Credit Pros. It this is The Credit Pros, STOP HARASSING ME! NO STARS!"[7]

---

[5] https://directory.youmail.com/directory/phone/3186671484
[6] https://www.yelp.com/biz/the-credit-pros-newark
[7] https://www.bbb.org/us/nj/newark/profile/financial-services/the-credit-pros-0221-90055767/customer-reviews

6

-  
- "They are spamming my phone with text messages NON STOP. I have never ever ever signed up for their service ever. They send obnoxious long text messages with a different sketchy number every time. When I call, I get a recorded message saying it's the Credit Pros, but any time I get connected with an actual human they pretend they can't hear me and hang up. What the heck? Makes no sense, just phishing for information is what it seems like. I would NEVER EVER use their services if you need credit repair. They are clearly predatory and will likely sell your information."[9]
- "Says to be "Credit Pros", credit report repair company. Kept calling all day, & texting also."[10]
- "Spoofing something local. It finally left a message, concerned about my credit."

## PLAINTIFF'S ALLEGATIONS

**Credit Pros Placed Pre-recorded Calls and Sent Autodialed Text Messages to Plaintiff Without His Consent**

28. Plaintiff uses his cell phone number for personal use only. It is not associated with a business.

29. In February of 2020, Plaintiff began receiving pre-recorded calls from Defendant using phone number 318-667-1484 and other spoofed numbers that could not be called back.

30. When Plaintiff answered these calls, he would interact with a pre-recorded interactive agent. Plaintiff Hancock would tell the agent to stop calling and would demand to

---

[8] https://www.bbb.org/us/nj/newark/profile/financial-services/the-credit-pros-0221-90055767/complaints
[9] *Id.*
[10] https://us.shouldianswer.net/phone-number/7062003761

7

speak to a supervisor. The agent would ignore these requests and simply repeat the same statement over and over again, indicating the fact that the agent was pre-recorded.

31.     On February 11, 2020 at 10:45 AM, Plaintiff answered a call from Defendant using phone number 318-667-1484 that he received on his cell phone. The call began with a pre-recorded message designed to sound like a live agent. Plaintiff demanded that the calls stop and hung up the phone.

32.     On February 11, 2020 at 10:49:57 AM, (11:50 AM on Plaintiff's cell phone), Plaintiff received an autodialed text message from Defendant using phone number 318-667-1484 on his cell phone. He then received a second autodialed text message exactly 1 second later, and a third autodialed text message 1 second after that:

| Incoming Text/Message | 318-667-1484 | 2/11/2020 | 10:49:57 AM CST | NA | $0.00 |
| Incoming Text/Message | 318-667-1484 | 2/11/2020 | 10:49:58 AM CST | NA | $0.00 |
| Incoming Text/Message | 318-667-1484 | 2/11/2020 | 10:49:59 AM CST | NA | $0.00 |



8

33. At 11:11 PM (displays as 12:11 PM on Plaintiff's cell phone) on February 11, 2020, Plaintiff received a pre-recorded voicemail from Defendant using phone number 318-667-1484:



34. At 11:14 AM on February 11, 2020, Plaintiff received an autodialed text message from Defendant again using phone number 318-667-1484 to his cell phone. A second autodialed text message was received exactly 3 seconds later:

| Incoming Text/Message | 318-667-1484 | 2/11/2020 | 11:14:58 AM CST |
| Incoming Text/Message | 318-667-1484 | 2/11/2020 | 11:15:01 AM CST |

35. On November 11, 2020 at 12:11 PM, Plaintiff Hancock answered a pre-recorded call from Defendant on his cell phone that was made using phone number 318-667-1484. Plaintiff played along this time, in order to determine exactly who Defendant is, and why Defendant was calling him.

36. Plaintiff was transferred from the pre-recorded interactive agent to a live agent. The live agent explained that the purpose of the calls was to provide Plaintiff with credit repair assistance. Plaintiff asked if there was a cost for this service in order to determine if the call was

9

a solicitation attempt. The agent said that the cost for the service would be approximately $150 per month. Plaintiff Hancock then questioned how Credit Pros got his contact information, as he had never reached out to the company for assistance. The agent replied that Plaintiff's information was provided by TransUnion.

37. Plaintiff had previously called TransUnion to dispute certain items on his credit report, but he never provided TransUnion consent to share his contact information with any other companies, and never consented to any companies that TransUnion shared his information with to call him using an autodialer or with a pre-recorded voice.

38. While Plaintiff was still on the phone with the agent, he received yet another autodialed text message on his cell phone from Defendant, again using phone number 318-667-1484. This text message received at 12:14 PM.

| Incoming Call | 318-667-1484 | 2/11/2020 | 12:11:10 PM CST | 8min 16sec |
| Incoming Text/Message | 318-667-1484 | 2/11/2020 | 12:14:57 PM CST | NA |

39. Plaintiff does not have a relationship with Credit Pros, or any of its affiliated companies, nor has he ever consented to any contact from Defendant.

40. Simply put, Credit Pros did not obtain Plaintiff's prior express written consent to place any solicitation telephone calls to him using a pre-recorded voice, or to send solicitation text messages using an autodialer.

41. Defendant's unauthorized telephone calls and texts harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Hancock's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

42. Seeking redress for these injuries, Hancock, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47

U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded solicitation calls to landline and cellular phone numbers, as well as unsolicited autodialed text messages.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made and Texts Sent by Credit Pros

43.  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone or residential landline, (3) using a pre-recorded voice, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.
>
> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) texted, (2) on the person's cellular telephone, (3) using substantially the same dialing equipment used to send text messages to Plaintiff, (4) for substantially the same reason Defendant texted Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to send text messages to Plaintiff, or (b) it did not obtain prior express written consent.

44.  The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

45. **Numerosity**: On information and belief, there are thousands of members of the Classes such that joinder of all members is impracticable.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendant used a pre-recorded voice when placing calls to Plaintiff and the members of the Class;

   (b) whether Defendant placed pre-recorded voice calls to Plaintiff and members of the Class without first obtaining consent to make the calls;

   (c) whether Defendant sent text messages to Plaintiff and members of the Class using an autodialer;

   (d) Whether Defendant sent text messages to Plaintiff and members of the Class without first obtaining consent to send the text messages;

   (e) whether Defendant's conduct constitutes a violation of the TCPA; and

   (f) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

47. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

48. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a

whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hancock and the Pre-Recorded No Consent Class)**

49. Plaintiff repeats and realleges paragraphs 1 through 48 of this Complaint and incorporates them by reference.

50. Defendant and/or its agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Pre-Recorded No Consent Class using a pre-recorded voice.

51. These pre-recorded voice calls were made *en masse* without the consent of the Plaintiff and the other members of the Pre-Recorded No Consent Class.

52. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-Recorded No Consent Class are each entitled to a minimum of $500 in damages for each violation, and up to $1,500 in damages

13

for each violation in the event that the Court determines that Defendant's conduct was willful and knowing.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Autodialed No Consent Class)

53. Plaintiff repeats and realleges paragraphs 1 through 48 of this Complaint and incorporates them by reference.

54. Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

55. These solicitation text messages were sent *en masse* without the consent of Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

56. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**DYLAN HANCOCK**, individually and on behalf of those similarly situated individuals

Dated: March 15, 2020

*/s/ Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*\* Pro Hac Vice Motion forthcoming*

*Attorneys for Plaintiff and the putative Classes*

15