**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| |
|---|
| DYLAN HANCOCK, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> -against-<br><br>THE CREDIT PROS INTERNATIONAL CORPORATION, a New Jersey corporation,<br><br>     Defendant. |

**Civil Action No.: 2:20-cv-02826-SRC-CLW**

**OPINION**

## I. Introduction

This is a putative class action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiff Dylan Hancock ("Plaintiff") alleges that defendant The Credit Pros International Corporation ("Credit Pros"), which offers consumers credit repair solutions, transmitted, without consent, pre-recorded phone calls and autodialed text messages to Plaintiff and putative class members, thereby violating the TCPA. See ECF No. 1 (the "Complaint") at ¶¶ 10-17, 24, 29, 43, 50, 54. On behalf of himself and the putative class, Plaintiff seeks "injunctive relief, requiring Defendant to stop making pre-recorded voice sales calls to consumers without their consent, and to stop sending autodialed text messages to consumers without their consent, as well as an award of statutory damages to the members of the Class and costs." Id. at ¶ 18.

The matter comes before the Court on Credit Pros' motions seeking (i) to amend its answer to assert certain affirmative defenses [ECF No. 17]; and (ii) a protective order in connection with third-party subpoenas issued by Plaintiff [ECF No. 19]. Plaintiff has opposed both motions and

Credit Pros has replied. ECF No. 18, 20, 21, 23, 25. The Court has carefully reviewed the parties' submissions and resolves the matter without oral argument per Local Rule 78.1. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Credit Pros' motion to amend its answer and, with one minor exception noted below, DENIES Credit Pros' motion for a protective order.

## II.   **Credit Pros' Motion to Amend**

### a.   **Background**

Having timely answered the Complaint, ECF No. 4-5, Credit Pros now seeks to amend its answer to include the following affirmative defenses (the "proposed defenses"):

> [16.] Plaintiff's claims and/or the claims of the putative class Plaintiff seeks to represent fail or otherwise are banned, in whole or in part, or are limited because the subject telephone calls (including but not limited to text messages and pre-recorded calls) constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such telephone calls violates the First Amendment right of Defendant.

> [17.] Plaintiff's claims and/or the claims of the putative class Plaintiff seeks to represent fail or otherwise are barred, in whole or in part, or limited because Plaintiff and/or the putative classes Plaintiff seeks to represent lack standing to bring this action. Neither Plaintiff nor the putative class members suffered the requisite harm required to confer standing under Article III of the United States Constitution.

> [18.] Defendant asserts that the Court lacks subject matter jurisdiction over this matter because the Telephone Consumer Protection Act (TCPA) is unconstitutional.

> [19.] Plaintiff fails to state and cannot state a plausible claim for class relief pursuant to Fed. R. Civ. P. 23 in that, among other things, the claims Plaintiff seeks to assert cannot be common or typical of the claims of the putative class, and class relief is not superior to other available methods for fairly and efficiently adjudicating the claims Plaintiff seeks to assert. Accordingly, Plaintiff cannot satisfy the numerosity, commonality, typicality, and adequacy requirements for this case to proceed as a class action.

ECF No. 17-1 at 41-42. The proposed defenses grow from the Supreme Court's decision in <u>Barr v. Am. Ass'n of Political Consultants</u>, 140 S. Ct. 2335 (2020) ("<u>AAPC</u>"), which was issued shortly after Credit Pros filed its answer. A hotly contested footnote in <u>AAPC</u> touches upon the TCPA's constitutionality between 2015 and 2020, dates that overlap with this case's relevant period. As will be discussed in more detail below, three of the first three district courts to encounter the issue, beginning with <u>Creasy v. Charter Communs., Inc.</u>, 489 F. Supp. 3d 499 (E.D. La. 2020), read <u>AAPC</u> to hold that the TCPA was unconstitutional during this time. These courts therefore dismissed their respective TCPA claims on the grounds that they lacked jurisdiction to enforce an unconstitutional law. <u>See</u> <u>generally</u> <u>Creasy</u>; <u>Lindenbaum v. Realgy, LLC</u>, 497 F. Supp. 3d 290 (N.D. Ohio 2020); <u>Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.</u>, 2020 U.S. Dist. LEXIS 236577 (M.D. Fla. Dec. 11, 2020) (the "<u>Creasy</u> Cases"). These decisions "led [Credit Pros' counsel] to believe, out of an abundance of caution and to protect the Credit Pros' rights, that [counsel] should seek leave to file an Amended Answer to assert additional defenses" grounded in the constitutionality arguments that prevailed in the <u>Creasy</u> Cases. ECF No. 17-3 at 2.[1]

---

[1] Credit Pros explains that it intends to file a motion to dismiss on such grounds, and more directly, that it wishes to preserve the proposed defenses to avoid procedural hurdles in doing so. ECF No. 17-3 at 4. The Court appreciates Credit Pros' concern—and will grant its request to the extent appropriate—but also notes that Credit Pros likely would not encounter any such hurdles without the sixteenth and eighteenth proposed defenses. <u>See, e.g.,</u> <u>S. Track & Pump, Inc. v. Terex Corp.</u>, 2013 U.S. Dist. LEXIS 140978, at *5-6 (D. Del. Sep. 30, 2013) ("Terex has not waived its constitutional challenge [by not asserting it as an affirmative defense]. Rule 8(c)(1) provides a list of affirmative defenses that must be raised in an answer, but it does not include a challenge to a statute's constitutionality. Plaintiff cites no binding authority for the proposition that a constitutional challenge to a statute is waived under Rule 8(c) if not pled as an affirmative defense in the answer."). Standing, however (which is raised in the seventeenth proposed defense), must be raised as an affirmative defense or it is waived. <u>Condus v. Howard Sav. Bank</u>, 1998 U.S. Dist. LEXIS 11300, at *10 (D.N.J. June 12, 1998). The necessity of the nineteenth proposed defense is addressed below.

**b. Legal Standards**

Because Credit Pros moved to amend after the deadline for amended pleadings, ECF No. 10 at ¶ 3, its motion implicates FED. R. CIV. P. 15(a)(2) and 16(b). See, e.g., Karlo v. Pittsburgh Glass Works, LLC, 2011 U.S. Dist. LEXIS 125667, at *9 (W.D. Pa. Oct. 31, 2011) ("Where, as here, the motion [to amend] was filed after the deadline set by the Court, the movant must satisfy the requirements of Rule 16 before the Court will turn to Rule 15.").

Rule 16(b) states that "[a] schedule may be modified only for good cause and with the judge's consent." For purposes of Rule 16(b), "[a] finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." Globespanvirata, Inc. v. Tex. Instruments, Inc., 2005 U.S. Dist. LEXIS 16348, at *9-10 (D.N.J. July 11, 2005) (quoting Rent-A-Center v. Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003) and citing FED. R. CIV. P. 16 advisory committee's note ("The court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension.")); see, e.g., Konopca v. FDS Bank, 2016 U.S. Dist. LEXIS 41002, at *4 (D.N.J. Mar. 29, 2016) ("To show good cause, 'the moving party must demonstrate that a more diligent pursuit of discovery was impossible.'") (quoting Alexiou v. Moshos, 2009 U.S. Dist. LEXIS 81815, at *8, (E.D. Pa. Sept. 9, 2009)). "The 'good cause' standard is not a low threshold. Disregard for a scheduling order undermines the court's ability to control its docket, disrupts the agreed-upon course of the litigation, and rewards 'the indolent and cavalier.'" J.G. v. C.M., 2014 U.S. Dist. LEXIS 56143, at *4-5 (D.N.J. Apr. 23, 2014) (quoting Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-55 (1st Cir. 1992)).

Assuming good cause is shown, the Court proceeds to Rule 15(a)(2), under which "a party may amend its pleading only with the opposing party's written consent or the court's leave. The

court should freely give leave when justice so requires." The "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" <u>United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.</u>, 839 F.3d 242, 249 (3d Cir. 2016) (quoting <u>U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.</u>, 769 F.3d 837, 849 (3d Cir. 2014)). The Third Circuit "has interpreted these factors to emphasize that 'prejudice to the non-moving party is the touchstone for the denial of the amendment.'" <u>Bechtel v. Robinson</u>, 886 F.2d 644, 652 (3d Cir. 1989) (quoting <u>Cornell & Co. v. Occupational Safety and Health Rev. Comm'n</u>, 573 F.2d 820, 823 (3d Cir. 1978)).

### c. <u>Analysis</u>

#### i. <u>The Nineteenth Proposed Defense</u>

At the outset, the Court will deny as futile Credit Pros' motion as to the nineteenth proposed defense, since the class certification challenges raised therein are not the province of an affirmative defense. <u>See, e.g.</u>, <u>Johnson v. Providence Health & Servs.</u>, 2018 U.S. Dist. LEXIS 84108, at *7 (W.D. Wash. May 18, 2018) (striking affirmative defenses because "[a] defendant's assertion that a plaintiff cannot meet the Rule 23 class certification requirements does not represent an affirmative defense, but a rebuttal of the plaintiff's class allegations.") (citing <u>Barnes v. AT & T Pension Ben. Plan-Nonbargained Program</u>, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010)); <u>Sanchez v. Roka Akor Chi., LLC</u>, 2015 U.S. Dist. LEXIS 19482, at *8 (N.D. Ill. Jan. 9, 2015) ("[C]lass certification is best addressed in the context of a motion that [defendant] will be able to oppose regardless of the presence of its single-sentence class certification affirmative defense.") (striking

affirmative defenses).[2] The Court therefore will deny leave for Credit Pros to assert the nineteenth proposed defense and will proceed to Rule 15 and Rule 16 analyses as to the other three.

### ii. The Sixteenth, Seventeenth, and Eighteenth Proposed Defenses

Plaintiff attacks Credit Pros' lack of diligence in pursuing amendment under Rule 16 and the substance of these proposed defenses as futile under Rule 15. The Court rejects both arguments.

### 1. Credit Pros' Diligence

The relevant dates in assessing Credit Pros' diligence under Rule 16 are as follows: Plaintiff filed the Complaint in March 2020. The Supreme Court issued AAPC in July 2020. The first case to interpret AAPC as deeming the TCPA unconstitutional (Creasy) was issued on September 28, 2020.[3] The deadline for amended pleadings was October 12, 2020. Credit Pros sought, and was granted, leave to file its motion on November 30, 2020. Credit Pros' motion is dated January 21, 2021.

In view of this chronology, inasmuch as the sixteenth through eighteen proposed defenses grow from AAPC and the Creasy Cases, Credit Pros was diligent in seeking leave to move to amend, having done so within a reasonable time after these decisions (particularly Creasy) were handed down. Cf., e.g., Dickerson v. Keypoint Gov't Sols., Inc., 2017 U.S. Dist. LEXIS 87049, at *9 (D. Del. June 7, 2017) ("Defendant filed this motion less than two months after plaintiff's

---

[2] Additionally, even assuming the defense was proper, because it has nothing to do with the constitutional issues raised in AAPC and the Creasy Cases, Credit Pros could have raised it at any time after the Complaint was filed. Its delay in doing so therefore constitutes a lack of diligence under Rule 16. The same might be said of Credit Pros' proposed seventeenth defense, which challenges Plaintiff's standing to bring this action, another issue not directly discussed in the Creasy Cases; however, standing may be seen as a logical outgrowth of the Creasy Cases' constitutional determinations and therefore will be permitted. Cf., e.g., Allen v. Wright, 468 U.S. 737, 751 (1984) (standing requires an "injury fairly traceable to the defendant's allegedly unlawful conduct") (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)) (emphasis added).

[3] Lindenbaum was handed down a month later. Hussain was issued just after Credit Pros sought leave to file this motion.

deposition. This court finds that defendant was diligent in pursuing its amendments because they were filed within a reasonable time after plaintiff's deposition.") (report and recommendation adopted, Civil Case No. 1:16-cv-00657-RGA (D. Del.), ECF No. 67; Enzymotec Ltd. v. NBTY, Inc., 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (motion to amend two months after obtaining new information constituted reasonable diligence under Rule 16(b)) (citing Permatex, Inc. V. Loctite Corp., 2004 U.S. Dist. LEXIS 10953, at *9 (S.D.N.Y. June 17, 2004)). The Court thus holds that Credit Pros was sufficiently diligent in moving to assert these defenses.

## 2. **Futility**

The relevant Rule 15 futility analysis[4] boils down to the following question, which appears to be one of first impression:[5] is an affirmative defense grounded in an interpretation of AAPC that construes the TCPA as unconstitutional from 2015-2020, futile as a matter of law? The query sits squarely at the intersection of a substantive inquiry (how to construe AAPC) and a procedural one (the standards for measuring the adequacy of affirmative defenses).

### a. **The Substantive Issue**

The germane portion of AAPC may be broadly summarized as follows. Congress passed the TCPA in 1991. The Act prohibits "robocalls" to cell phones. In 2015, Congress amended the Act to include a carveout permitting robocalls made for purposes of collecting federal debt. In AAPC, the Court held the federal debt exemption was unconstitutional. See generally 140 S. Ct. at 2343-45, 2347.

The conflict at the district court level arises from the following footnote 12 in AAPC:

---

[4] This analysis most pointedly concerns the sixteenth and eighteenth proposed defenses and more obliquely touches upon the proposed seventeenth defense, which is grounded in standing. See footnote 2, supra. Plaintiff does not directly attack the proposed standing defense as futile.

[5] The parties have not presented, nor is the Court aware of, any case confronting this exact issue.

> although our decision means the end of the government-debt
> exception, no one should be penalized or held liable for making
> robocalls to collect government debt after the effective date of the
> 2015 government-debt exception and before the entry of final
> judgment . . . . On the other side of the ledger, our decision today
> does not negate the liability of parties who made robocalls covered
> by the robocall restriction.

140 S. Ct. at 2355 n.12.

Subsequent decisions have wrestled with the question of whether the TCPA had teeth in the period when the government-debt exception was on the books (that is, from the passage of the amendment in 2015 through the AAPC decision in 2020). Their analyses center on whether, under the doctrine of severability, the non-offending portions of the law (i.e., the provisions that prohibit robocalls generally) remained effective during a time when a clause later deemed unconstitutional (i.e., the government-debt exception) was appended to them.

The Creasy Cases consign the AAPC footnote to non-binding dicta and conclude that the unconstitutionality of the exception rendered the whole of the TCPA invalid from 2015 through 2020, therefore depriving those courts of subject matter jurisdiction to hear TCPA claims arising during this time. See Creasy, 489 F. Supp. 3d at 503 (E.D. La. 2020) (referring to footnote 12 as "passing Supreme Court dicta of no precedential force" and holding that "in the years in which § 227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the entirety of the provision was, indeed, unconstitutional. That fact deprives the Court of jurisdiction over much of this action."); Lindenbaum, 497 F. Supp. 3d at 296, 298-99 ("[A]t the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. . . . Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."); Hussain, 2020 U.S. Dist. LEXIS 236577, at *7-8 ("[A]t the time Defendants engaged in

the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction. Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter jurisdiction over this action.") (citing U.S. v. Baucum, 80 F.3d 539, 540-41 (D.C. Cir. 1996)). It is these interpretations that give life to Credit Pros' defenses: Credit Pros will argue—as the defendants did, successfully, in the Creasy Cases—that Plaintiff's and the putative class's claims fail because they seek to enforce an unconstitutional law, something that courts lack jurisdiction to facilitate.

Most other courts to consider this issue have come out the other way, pointing to footnote 12 and denying motions to dismiss because, in their view, AAPC falls short of wholesale invalidating the TCPA from 2015 through 2020, notwithstanding the then-extant unconstitutional government-debt exception. See cases cited in ECF 18 at 3-4; e.g., McCurley v. Royal Sea Cruises, Inc., 2021 U.S. Dist. LEXIS 16403, at *8, 11 (S.D. Cal. Jan. 28, 2021) ("[T]he Court disagrees with the district court decisions in Lindenbaum . . . and Creasy . . . . Justice Kavanagh's statement in AAPC makes it clear that the TCPA still applies to [robocalling] even though it occurred between 2015 and 2020."); Less v. Quest Diagnostics, Inc., 2021 U.S. Dist. LEXIS 14320, at *3 (N.D. Ohio Jan. 26, 2021) ("[T]his Court finds there is no constitutional defect to the Plaintiff's claim under [the TCPA] for conduct taking place in the 2015-2020 period."); Trujillo v. Free Energy Sav. Co., LLC, 2020 U.S. Dist. LEXIS 239730, at *11-12 (C.D. Cal. Dec. 21, 2020) ("The Court respectfully declines to follow the reasoning of Creasy, Lindenbaum, and Hussain. . . . [T]he robocall statute remains enforceable, at least against non-government-debt collectors, as to calls made between 2015 and 2020.") (motions to dismiss for lack of subject matter jurisdiction denied in all three cases).[6] The Third Circuit has not weighed in on this matter.

---

[6] For a variety of reasons concerning the structure of AAPC that are beyond the scope of this matter, these courts credit AAPC's footnote 12 as binding, or at least persuasive, authority. See, e.g., McCurley, 2021

**b.  The Procedural Issue**

The question of whether <u>AAPC</u> compels dismissal of Plaintiff's TCPA claims is a good one, with venerable federal courts supporting both sides of the ledger. And if this Court were encountering a dismissal motion, it would be charged with undertaking a similar analysis and determining which side of the post-<u>AAPC</u> divide it deems correct. This issue, though, is not <u>sub judice</u>. Instead, Credit Pros seeks only to assert the proposed defenses. Its motion therefore implicates a different analytical framework from that at issue in the matters cited above.

This distinction grows from certain fundamental differences between claims and affirmative defenses. As explained in <u>Weed v. Ally Fin. Inc.</u>, 2012 U.S. Dist. LEXIS 89713 (E.D. Pa. June 28, 2012),

> Rule 8(a)(2) applies to claims (including counterclaims and cross-claims) and requires the pleader to aver "a short and plain statement of the claims <u>showing</u> his entitlement to relief." By contrast, Rule 8(c), sets forth the standard for affirmative defenses and requires a party to affirmatively <u>state</u> any affirmative defense. In light of this distinction, . . . a party must merely state, not show, an affirmative defense.

<u>Id.</u> at *9 (discussing <u>Tyco Fire Products LP v. Victaulic Company</u>, 777 F. Supp. 2d 893 (E.D. Pa. 2011)).

Because the standard for asserting affirmative defenses is different (and to be sure, lower) than that for asserting claims—<u>i.e.</u>, claims must be "show[n]" while defenses just need to be "state[d]"—likewise, amendment of defenses involves a different (again, lower) futility standard than amendment of claims. Whereas futility of claims is generally governed by Rule 12(b)(6) (and

---

U.S. Dist. LEXIS 16403, at *7 (disagreeing with notion that footnote 12 is <u>dicta</u> because <u>AAPC</u> was a fragmented Court, with seven Justices agreeing that "the liability of parties making robocalls who were not collecting a government debt is not negated"); <u>Stoutt v. Travis Credit Union</u>, 2021 U.S. Dist. LEXIS 6019, at *7-8 (E.D. Cal. Jan. 12, 2021) (although footnote 12 is <u>dicta</u>, it is "ultimately persuasive") (citing cases).

by extension, <u>Iqbal</u> and <u>Twombly</u>'s plausibility standard)[7], affirmative defenses are futile only if they cannot satisfy Rule 12(f), which provides for the striking of an "insufficient defense". FED. R. CIV. P. 12(f); <u>see, e.g.</u>, <u>Burke-Ventura v. VITELCO</u>, 2008 U.S. Dist. LEXIS 47924, at *4 (D.V.I. June 20, 2008) ("[W]hen a party seeks to amend its answer to add an affirmative defense, [l]eave to amend an Answer should be denied if the proposed defenses are legally insufficient" under Rule 12(f)) (quoting <u>Medical Graphics Corp. v. Harford Ins. Co.</u>, 171 F.R.D. 254, 257 (D. Minn. 1997)). This is reflected in the case law of "this Circuit . . . holding that the heightened pleading standard of <u>Twombly</u> and <u>Iqbal</u> does not apply to affirmative defenses." <u>FTC v. Hope Now Modifications, LLC</u>, 2011 U.S. Dist. LEXIS 24657, at *8 (D.N.J. Mar. 10, 2011); <u>e.g.</u>, <u>Borough of Edgewater v. Waterside Constr., LLC,</u> 2016 U.S. Dist. LEXIS 173261, at *21 (D.N.J. Dec. 14, 2016) ("Courts in this District have generally found the <u>Iqbal/Twombly</u> plausibility standard inapplicable to the pleading of affirmative defenses under Rule 8(c).").[8] To this end, the rejection of an affirmative defense is deemed "'a drastic remedy, to be resorted to only when

---

[7] An important point of clarification is in order here. Most of the post-<u>AAPC</u> cases referenced above concerned motions to dismiss not for failure to state a claim under Rule 12(b)(6), but for lack of subject matter jurisdiction under Rule 12(b)(1). This distinction, while notable, is not particularly significant to the present discussion, since the futility analyses under these rules are not fundamentally any different: a court must deny a proposed amendment that it lacks subject matter jurisdiction to adjudicate just the same as it must deny a proposed amendment that fails to state a claim. <u>See, e.g.</u>, <u>United States v. Sensient Colors, Inc.</u>, 2009 U.S. Dist. LEXIS 11070, at *9 (D.N.J. Feb. 13, 2009) (in addition to failure to state a claim under Rule 12(b)(6), "[a] proposed claim is also futile if the court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). . . . Thus, it is futile for a court to grant a motion to amend a pleading if, after filing, the court must dismiss the amended pleading for lack of jurisdiction."); <u>cf.</u> <u>Trujillo</u>, 2020 U.S. Dist. LEXIS 239730, at *2 n.1 ("Although Defendant presents the motion as a subject-matter jurisdiction challenge, the Court doubts that the Rule 12(b)(1) framework is appropriate to apply here. . . . The Court need not resolve whether the appropriate Rule 12(b) analog is Rule 12(b)(1) or Rule 12(b)(6) because the Court's reasoning and disposition hold under both frameworks."). Because there is little elemental difference in this context between Rule 12(b)(1) and Rule 12(b)(6), the Court finds it proper to consider collectively Rules 12(b)(1) and 12(b)(6) in order to highlight the contrast with Rule 12(f).

[8] Of note, some courts disagree and hold that <u>Iqbal</u> and <u>Twombly</u> do govern affirmative defenses. <u>See, e.g.</u>, <u>Godson v. Eltman, Eltman & Cooper, P.C.</u>, 285 F.R.D. 255, 257-59 (W.D.N.Y. 2012) (discussing split in authority). The Court agrees with the above-referenced majority view embraced within the Third Circuit.

required for the purposes of justice.'" <u>Mycone Dental Supply Co. v. Creative Nail Design, Inc.</u>, 2013 U.S. Dist. LEXIS 88652, at *29 (D.N.J. June 24, 2013) (quoting <u>In re Gabapentin Patent Litig.</u>, 649 F. Supp. 2d 340, 346 (D.N.J. 2009)).

### c. **The Present Question**

Applying this framework to the amendments at issue, because these are proposed defenses, not claims, the Court need only determine if Credit Pros has "state[d]" defenses that are something more than "legally insufficient." Consequently, the cited cases, which concerned dismissal motions and thus triggered Rule 12(b) scrutiny, are not directly on point. Instead, the Court concludes that, to the extent that the proposed defenses rely on an interpretation of <u>AAPC</u> that invalidates the TCPA as unconstitutional from 2015-2020, the relevant bar is passed. Three federal district courts, although representing the minority view, have conducted thorough analyses and duly concluded that such defenses not only are colorable under Rule 12(f), but in fact compel dismissal under the more searching Rule 12(b). At bottom, therefore, the proposed defenses are sufficient under the applicable standards of Rules 8(c) and 12(f). Any further analysis is the province of a motion to dismiss.

Because Credit Pros' sixteenth through eighteenth proposed defenses are neither untimely under Rule 16 nor futile under Rule 15, the Court grants Credit Pros' motion to assert these defenses.

## III. **Credit Pros' Motion for a Protective Order**

### a. **Background**

Plaintiff has served subpoenas upon three third-party vendors, Ringba, Five9, and Drips (the "vendors"), which were identified in Credit Pros' discovery responses. Ringba provides a call tracking platform for incoming calls to Credit Pros; Five9 provides Credit Pros with its phone

system; and Drips is a computer software program that allows Credit Pros to make outgoing marketing calls. Certification of Jason Kaplan, ECF No. 19-3 (the "Kaplan Cert.") at ¶¶ 2-3. Plaintiff states that the subpoenas are geared toward obtaining "crucial information to Plaintiff's class certification motion and Plaintiff's and putative class members' claims"; more specifically, that "[t]hese documents are crucial to identify class members and to demonstrate Credit Pros' systematic course of conduct uniformly affected class members who received automated calls to their cellular telephone or residential landlines, and whether such conduct was willful." ECF No. 21 at 5.

Although Plaintiff subpoenaed a total of nine categories of information from the vendors, Credit Pros has consented to the vendors providing certain responses. See generally Kaplan Cert.[9] Consequently, Credit Pros' motion implicates only the following requests:

      1.  All records, including call logs (including prerecorded calls and text messages), billing records, and communications, associated with any account maintained by Defendant.

      2.  Information or data concerning all calls (including prerecorded calls and text messages) made to, by or on behalf of Defendant using your services, including call logs in native form and recordings or copies of the calls.[10]

      3.  The identity and contact information (including any databases in which such information is contained) for any and all recipients of outbound calls.[11]

---

[9] Credit Pros' consent to certain requests is conditioned on "plaintiff maintaining[ing responsive] information on a confidential basis pursuant to the Court's Confidentiality Order." See Kaplan Cert. at, e.g. 5. The Court will not affirmatively order such treatment of any disclosed information. Instead, per the terms of the order, Credit Pros and/or the vendors may designate certain information as confidential and subject to the order's terms. See ECF No. 14 at ¶ 1.

[10] The wording of this request differs slightly across the three subpoenas.

[11] As will be discussed, Plaintiff also seeks from Ringba such information concerning incoming calls.

4. Documents sufficient to identify all products or services supplied by [the vendors] to Defendant or anyone acting on its behalf.

5. All contracts or agreements with Defendant or anyone acting on their behalf.

6. If any documents responsive to the requests in this [subpoena] are in the hands of third parties, produce documents sufficient to identify those third parties.

**b. <u>Standing</u>**

Before proceeding to the substance of Credit Pros' motion, the Court must address the issue of standing. Of note, Credit Pros has moved for a protective order, not to quash, an important distinction as this question is concerned. The right to move to quash a subpoena issued to a third party is generally confined to instances "when the party claims a personal privilege in the production sought." <u>Aetrex Worldwide, Inc. v. Burten Distribution</u>, 2014 U.S. Dist. LEXIS 172857, at *11-12 (D.N.J. Dec. 12, 2014) (quoting <u>Schmulovich v. 1161 Rt. 9, LLC</u>, 2007 U.S. Dist. LEXIS 59705 at *2 (D.N.J. Aug. 15, 2007); citing <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir. 1975)). However,

> [i]f a party lacks standing to move to quash or modify a subpoena, . . . [it] can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information.

<u>Id.</u> at *12 (quoting <u>US EEOC v. United Galaxy</u>, 2011 U.S. Dist. LEXIS 103398 at *5 (D.N.J. Sept. 13, 2011)). Because Credit Pros contends that the subpoenas seek information that would

jeopardize its own interests, and because, as a party, it has standing under Rule 26(c),[12] Credit Pros has standing to challenge the subpoenas.[13]

c. **Legal Standard**

Under Rule 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending", whereupon "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". The cornerstone of this inquiry is Rule 26(c)'s good cause standard. Robotic Parking Sys. v. City of Hoboken, 2010 U.S. Dist. LEXIS 27180, at *5 (D.N.J. Jan. 19, 2010) (Chesler, J.) (citing Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005)). As explained by the Third Circuit:

> there is good cause when a party shows that disclosure will result in a clearly defined, specific and serious injury but that broad allegations of harm are not sufficient to establish good cause. . . . [T]he party seeking protection has the burden of showing that there is good cause for it. [District courts] determine whether there is good cause by balancing the interests of the public and the parties . . . .

Shingara, 420 F.3d at 306 (discussing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)). Relevant factors include

> 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

---

[12] Rule 26(c) confers such standing upon "[a] party or any person from whom discovery is sought".

[13] As discussed below, this does not hold true as to Credit Pros' burdensomeness argument.

Id. at 306 (citing <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 483 (3d Cir. 1995). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." <u>Cipollone v. Liggett Grp., Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986) (citations omitted). A court may also quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information" or which "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3).

### d.  **The Disputed Materials**

#### i.  **Call Logs and Related Materials**

Most of the disputed requests concern call logs and related information regarding calls and texts placed by Credit Pros using the vendors' services.[14] Credit Pros' primary arguments against disclosure of these materials are that the items sought are irrelevant to this lawsuit, that Plaintiff seeks confidential information, and that these requests are overly burdensome. The Court rejects all three objections.

##### 1.  **Relevance**

Contrary to Credit Pros' asseverations, production of call logs and related data is standard fare in TCPA actions. In fact, in a matter decided just over two months ago (but before the instant motion was filed), Credit Pros lost on a gambit to avoid production of the very same scope of information as here. The court in <u>Warren v. Credit Pros Int'l Corp.</u>, 2021 U.S. Dist. LEXIS 79150 (M.D. Fla. Apr. 26, 2021) held that

> Plaintiff is also entitled to receive—prior to class certification—[15]
> the documents and information related to the call logs, transmission

---

[14] This category encompasses the first three requests listed above.

[15] On reply, Credit Pros argues that production of documents before class certification is unwarranted. In support, Credit Pros cites (i) cases in which pre-certification production was denied; and (ii) TCPA cases

> summaries, outbound call lists, and the information contained
> therein bearing on Defendant's communications with the putative
> class members, because Defendant has not moved to bifurcate class
> and merits discovery and such information is relevant both to the
> merits of Plaintiff's claims and to the numerosity and commonality
> requirements in Rule 23 . . . .

Id. at *21-23 (collecting TCPA cases where call logs and related information was deemed discoverable). In another case involving Credit Pros, Eisenband v. Credit Pros Int'l Corp., 2018 U.S. Dist. LEXIS 106073 (S.D. Fla. June 25, 2018), a third party lost its motion to quash under essentially identical circumstances as here: a subpoena served upon a third party identified through Credit Pros' discovery responses was held "patently relevant to Plaintiff's claim of violations of the TCPA." Id. at *2-4. Notably, not only did the Eisenband subpoena seek similar information to that challenged here (such as "transmission reports or logs"), it was in fact far broader. See Eisenband v. Credit Pros Int'l Corp., Civil Case No. 0:18-cv-60053-BB (S.D. Fla.), ECF No. 27-1 (subpoena seeking eighteen categories of information). Despite this broad reach, the court held the requests were appropriate. 2018 U.S. Dist. LEXIS 106073, at *5.

Credit Pros cases aside, Plaintiff cites what appears to be the overwhelming weight of authority supporting the propriety of production of call logs and related items. See ECF No. 21 at 9-10 and n.1; e.g., Medina v. Enhanced Recovery Co., Ltd. Liab. Co., 2017 U.S. Dist. LEXIS 186651, at *9 (S.D. Fla. Nov. 9, 2017) ("Outbound call lists are relevant in TCPA class actions to establish the numerosity and commonality requirements for class certification under Rule 23, as well as to prove the merits of Plaintiffs' claims.") (citing cases). Conversely, Credit Pros fails to cite a single TCPA case in which similar requests were denied, and on reply only passingly and

---

in which class certification was denied, a presentation that falls short of demonstrating that pre-certification production in this TCPA matter would be improper.

unconvincingly attempts to distinguish two of the roughly dozen cases cited by Plaintiff in opposition. The case law plainly supports Plaintiff's position on this point, which the Court therefore resolves in Plaintiff's favor.[16]

## 2. **Confidentiality**

Credit Pros also argues that these requests improperly seek information that is confidential and proprietary, and which qualifies as trade secrets. The Court disagrees. The parties have entered into a discovery confidentiality order that expressly addresses the confidential treatment of, inter alia, "trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information"; "private or confidential personal information"; and "information received in confidence from third parties". ECF No. 14 at ¶ 1. Courts encountering the objection raised here routinely overrule it where similar confidentiality orders are in place. See, e.g., Medina, 2017 U.S. Dist. LEXIS 186651, at *14 ("[T]he Court entered an order to protect disclosure of confidential information and trade secrets. . . . Accordingly, Defendant's objection on this basis is overruled."); Symantec Corp. v. Sidman, 2014 U.S. Dist. LEXIS 58082, at *10 (N.D. Cal. Apr. 24, 2014) ("[T]o the extent there is a trade secret in this information, that secret reasonably may be protected by the protective order already in place . . . .").[17]

---

[16] It is true that much of the referenced authority concerns party discovery, rather than, as here, third party subpoenas. It is equally true that "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." Stamy v. Packer, 138 F.R.D. 412, 419 (D.N.J. 1990) (citing cases). This distinction does not, however, mandate a different result. First, courts have reached similar conclusions in matters concerning third party subpoenas. See, e.g., Eisenband, supra; Taylor v. Universal Auto Grp. I, Inc., 2015 U.S. Dist. LEXIS 51124, at *14-16 (S.D. Ohio Apr. 17, 2015) (directing third party "to produce documents, communications, databases, and emails containing lists of the phone numbers that [third party] called on behalf of [TCPA defendant]"). Second, with the patent weight of authority supporting the notion that the information requested herein is discoverable, the Court sees no reason to conclude that this information falls within the category of materials sufficiently relevant to mandate production by a party but not relevant enough to warrant nonparty production.

[17] Additionally, because the parties here are not competitors, there is little risk that information exchanged in this litigation will be used to Credit Pros' detriment. And to the extent Credit Pros is concerned with the

18

Credit Pros passingly states that "[i]n several instances, we have non-disclosure agreements with our Affiliates." Kaplan Cert. at 3. However, Credit Pros provides no detail to this effect, let alone copies of these purported NDAs. The Court therefore will not credit this argument. Cf. Davenport v. SP Jedi, Inc., 2019 U.S. Dist. LEXIS 229314, at *9 (D. Ariz. Apr. 19, 2019) ("Defendants argue that the Court should quash the subpoenas because SP Jedi, Inc., is subject to a non-disclosure agreement with the federal government . . . . Defendants provide a copy of the NDA but do not identify where in the NDA this prohibition against disclosure of payments is found. The Court reviewed the document and did not find a provision containing such a prohibition. . . . [I]t is not the Court's responsibility to scour the federal code or register to find a prohibition Defendants contend exists but have not taken the time to identify. Therefore, the Court will not quash the subpoenas or enter a protective order on these grounds.").

In sum, Credit Pros' confidentiality arguments are overruled.[18]

### 3. **Burdensomeness/Scope**

Credit Pros also contests these requests as "highly burdensome." This argument fails for several reasons. Most fundamentally, Credit Pros does not have standing to assert a burdensomeness argument on behalf of the vendors. See, e.g., DVM Mfg., LLC v. Gallagher, 2017 U.S. Dist. LEXIS 124881, at *6 (E.D. Pa. Aug. 8, 2017) ("A party does not have standing to quash

---

vendors producing sensitive information such as social security numbers or credit card numbers, it is free to confer with Plaintiff and the vendors as to the vendors redacting such information.

[18] Although the Court need not reach this question, it briefly notes that it is questionable whether the information at issue constitutes a trade secret in the first instance. The Complaint alleges that "Credit Pros engages in telemarketing in order to advertise its credit repair solutions to consumers." Complaint at ¶ 11. While Credit Pros has denied this allegation, that denial is based on the notion that "plaintiff has not defined the term 'telemarketing'", as opposed to the substance of the allegation. ECF No. 5 at ¶ 11. It therefore may be inferred that a list of Credit Pros' outgoing calls does not reflect Credit Pros' customers, but instead, people to whom Credit Pros sought to advertise its services.

a subpoena served on a nonparty simply because the subpoena is unreasonably burdensome.")
(citing cases). Even if Credit Pros did have standing to make this argument, it supports it with <u>ipse dixit</u> statements such as "Credit Pros has made over the past 4 years numerous outbound calls to clients, potential clients, and others. This appears to be a very burdensome request . . . ." Kaplan Cert. at 7-8. These are prime examples of "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," which the Third Circuit has cautioned "do not satisfy the Rule 26(c) test." <u>Cipollone</u>, <u>supra</u>.[19]

To the extent Credit Pros challenges the subpoenas' temporal scope, that date range is a natural outgrowth of the TCPA's four-year statute of limitations. <u>See</u>, <u>e.g.</u>, <u>Hawk Valley, Inc. v. Taylor</u>, 2012 U.S. Dist. LEXIS 47024, at *38 (E.D. Pa. Mar. 30, 2012) (four-year statute of limitations for TCPA actions). Credit Pros first misconstrues the discoverable period when it focuses on its contact with Plaintiff occurring in February 2020. ECF No. 19-2 at 12. Irrespective of when this contact occurred, the Complaint properly alleges damages dating back four years from the date of its filing. The Court also rejects Credit Pros' argument that it should be exempt from producing materials after the filing of the complaint. <u>See</u>, <u>e.g.</u>, <u>In re New Century</u>, 2009 U.S. Dist. LEXIS 133786, at *7 (C.D. Cal. July 8, 2009) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."). In sum, given that this case was filed on March 15, 2020, records covering March 15, 2016 through the present are discoverable.

---

[19] Additionally, Credit Pros' protestations that it does not have certain requested information are a <u>non sequitur</u>, as this is completely irrelevant to subpoenas issued to the vendors.

### ii. **Other Requests**

As noted, Ringba provides a call tracking platform for incoming calls to Credit Pros. To this end, Plaintiff has subpoenaed certain incoming call information from Ringba. <u>See</u> Exhibit A to Kaplan Cert. While this information is not directly relevant to Plaintiff's TCPA claims (which concern calls and texts allegedly transmitted <u>by</u> Credit Pros <u>to</u> Plaintiff's phone), it is significant as to Plaintiff's capacity to contest Credit Pros' consent defenses. <u>See</u> ECF No. 5, Seventh Affirmative Defense ("Defendant asserts the doctrine of consent, express consent, and prior express consent under the Telephone Consumer Protection Act."); ECF No. 19-2 at 5 (Credit Pros "maintains it had Plaintiff's consent to contact him, specifically that Plaintiff originally contacted Credit Pros in November 2019 and requested information."); <u>e.g.</u>, <u>Martinez v. TD Bank USA, N.A.</u>, 2017 U.S. Dist. LEXIS 101979, at *9 (D.N.J. June 30, 2017) ("If a defendant, as an affirmative defense, can show that the called party provided his or her express consent, then the TCPA claim will fail.") (citing <u>Van Patten v. Vertical Fitness Group, LLC</u>, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014)). Credit Pros does not effectively rebut the notion that incoming call data may be relevant to rebutting its consent defenses; instead, rehashing several times that incoming call data is irrelevant to the underlying TCPA violations. The Court therefore finds that this information is discoverable. This is, again, consistent with <u>Warren</u>, which held that

> Plaintiff is entitled to documents and evidence pertaining to prior express consent and an established business relationship, particularly since Defendant raised the issue of consent as an affirmative defenses in responding to the original Complaint. . . . As such, any documents and evidence pertaining to prior express consent and/or an established business relationship are relevant to Defendant's defenses and to the merits of Plaintiff's case.

2021 U.S. Dist. LEXIS 79150, at *23-24 (citing <u>Medina</u>, 2017 U.S. Dist. LEXIS 186651, at *23 ("how [defendant] obtained the telephone number of a proposed class member is relevant evidence

of whether that person provided prior express consent"); <u>Gaines v. Law Office of Patenaude &</u> <u>Felix, A.P.C.,</u> 2014 U.S. Dist. LEXIS 110162, at \*11 (S.D. Cal. June 12, 2014) ("The Court notes that if Defendant asserts the defense of prior express consent, it will have the burden to establish that defense. Thus, the Court finds it is not [] overly burdensome for Defendant to produce the documentation it intends to rely on to support its defense.")). Consequently, Plaintiff's requests to Ringba for incoming call data are proper.

Plaintiff has requested "contracts or agreements with Defendant or anyone acting on their behalf." This demand is proper, with a caveat: such agreements are discoverable to the extent that they concern the vendors placing voice or text messages during the relevant period. <u>See</u>, <u>e.g.</u>, <u>Warren</u>, 2021 U.S. Dist. LEXIS 79150, at \*27-28 ("Defendant's agreements . . . with third parties regarding transmission of pre-recorded messages or text messages on Defendant's behalf during the relevant time period are also discoverable.") (citing <u>Grant v. Regal Auto. Grp., Inc.,</u> 2020 U.S. Dist. LEXIS 42685, at \*6-7 (M.D. Fla. Mar. 12, 2020) (finding defendant's communications with third-party vendors regarding voicemail campaigns during actionable time period to be relevant and proportional to the needs of the case); <u>O'Shea v. Am. Solar Sol., Inc.,</u> U.S. Dist. LEXIS 23420, at \*16 (S.D. Cal. Feb. 18, 2016) (ordering production of materials "concern[ing TCPA] Defendant's relationship to other entities or persons" because "[w]hether other entities aided [defendant] in placing phone calls is relevant to [plaintiff's] TCPA claims and discoverable."). As in these matters, the Court holds that agreements between Credit Pros and the vendors concerning the vendors' provision of call or text message services are relevant to Plaintiff's claims and proportional to the needs of the case. The Court grants a protective order to the extent these requests concern agreements that are not related to the vendors placing voice or text messages during the relevant period.

Plaintiff also seeks "[d]ocuments sufficient to identify all products or services supplied by [the vendors] to Defendant or anyone acting on its behalf." For reasons that are unclear, Credit Pros has consented to Five9 responding to this request, while as to Drips and Ringba, Credit Pros rehashes its objections to disclosure of financial information. The Court rejects these arguments. Being that the vendors appear to have aided Credit Pros in the alleged unlawful activity underlying the Complaint, information concerning the vendors' relationships with Credit Pros plainly falls under Rule 26(b)(1)'s umbrella. Additionally, the call logs and related materials discussed above likely will "suffic[e] to identify" the products or services supplied by the vendors to Credit Pros. To the extent any additional materials are produced, as above, Credit Pros may seek to subject them to the parties' confidentiality order.

Finally, Plaintiff requests for the vendors to identify third parties who may be in possession of responsive documents. Credit Pros responds that it "do[es] now know what plaintiff is asking for" and defers to the Court and the vendors to address these requests. Kaplan Cert. at, e.g., 10. The Court will not issue an advisory opinion on how the vendors should respond to these items, and instead directs Credit Pros and the vendors to the subpoenas' plain terms and to Rules 26 and 45 to determine their responsibilities thereunder.

## IV. Conclusion

An order consistent with this opinion follows.

Dated: July 13, 2021

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.
